IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Edmond Stanley Adams, III,    ) | Civil Action No. 6:12-3424-DCN-KFM |
|         Petitioner,   ) | |
|               ) | **REPORT OF MAGISTRATE JUDGE** |
|     vs.      ) | |
|               ) | |
| Warden Eagleton,     ) | |
|               ) | |
|         Respondent.   ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND[1]

The petitioner is currently incarcerated in Ridgeland Correctional Institution in the South Carolina Department of Corrections. The petitioner was indicted by the Richland County Grand Jury during the November 1998 term for kidnaping, criminal sexual conduct in the first degree, and armed robbery (amend. app. 2186-87, 2190-91, 2193, 2195). [2]

---

[1] The factual background of this case is taken from the facts recited in *State v. Adams*, 2005-UP-520 (S.C. Ct. App. Sept. 15, 2005) (doc. 34-8).

[2] The amended appendix contains multiple page numbers, which the respondent notes are likely from the record on appeal (*see* m.s.j. 1, n.1, doc. 30). The page cites in this report are those typewritten at the bottom center of the amended appendix.

The charges stemmed from an incident on August 16, 1998, in which the petitioner lured the victim to his house and raped her, forcing her to engage in oral, vaginal, and anal sex. That night, the petitioner asked the victim, who was the petitioner's co-worker, to give him a ride home after work from Mr. Friendly's in exchange for a marijuana cigarette. The victim drove another co-worker home first and then proceeded to the petitioner's house. On the way to the petitioner's house, he talked about his girlfriend. When they arrived at his house, the victim stayed in the car, while the petitioner went inside to get the marijuana cigarette. He came back out and told the victim that his girlfriend wanted to meet her. Once they were inside the house, the petitioner pretended to have a conversation with someone in the house and asked the victim to wait in a bedroom to meet his girlfriend. Shortly thereafter, the petitioner entered the bedroom, alone, with two belts and a knife and told the victim that she was his girlfriend.

The petitioner hit the victim and demanded she undress. He pushed her onto the bed and removed her pants. He repeatedly struck her head. When she refused to take off her bra, he put the knife to her throat and threatened her life. Then he tied her hands behind her back with his belt and raped her. While he was raping her, she became ill, and had diarrhea on the sheets. The petitioner allowed her to go to the bathroom to clean herself. When she refused to come out of the bathroom, he barged in and dragged her out. The petitioner tied her ankles together with another belt and demanded money and the keys to her car. He told her he was going outside to move her car, and if she was not in the exact same position when he returned, he would kill her. While the petitioner was gone, the victim untied the belts, pushed out a window screen, and jumped out. She ran down the street screaming and looking for help, but no one heard her. The petitioner pursued her and tackled her into a ditch full of water. He strangled her and held her head down in the ditch, choking her until she passed out. She woke up screaming, so the petitioner forced her head into the ditch again, and she passed out again. When she awakened, the

2

petitioner made her drive around for a while.  Later, he made her lie down in the backseat while he drove back to his house.  The petitioner demanded she shower, and he raped her again.

In the meantime, the victim's mother and boyfriend became concerned when the victim did not arrive home as expected after work.  After she had been missing for a few hours, they called the owner of Mr. Friendly's, Mr. Krsitian Niemi, and he called the police. Niemi informed the police that the victim had offered to drive the petitioner home after work.

As the petitioner was raping her again, the police knocked at his door.  He answered the door, dressed only in a towel, and the police asked him if victim was at his house.  She dressed while the officers were questioning him about her whereabouts.  The petitioner instructed her to tell the officers that "everything was fine."  She whispered to one of the officers that "something has happened."  Officer William Meyer noted that victim's voice was not normal.  Finally the victim was able to escape and drove home.

Once she arrived at her mother's house, she told her mother what had happened, and her mother called the police and EMS.  The victim told law enforcement that the petitioner had raped her, held her hostage, assaulted her, and stolen her money.  She was taken to the emergency room where her physical injuries were documented, and a rape protocol kit was performed.  The victim sustained bruising and redness on her neck, bruising and redness to her eye, imprints of finger marks around her neck, scratch marks on her breast, abdomen, and stomach, and brush burn marks and abrasions on both knees and thighs.  The victim was found to have experienced trauma consistent with vaginal and anal rape.  The victim continued to have difficulty with her eye after the incident.  Several days later, she scheduled an appointment with an ophthalmologist.  He diagnosed her with traumatic subconjunctival hemorrhage caused by blunt trauma, most likely a fist, to her eye. The injury was consistent with her description of the petitioner's attack.

3

Once the victim was at the hospital, a police officer went back to the scene. He found a bare footprint in the mud near the petitioner's residence as well as a ditch full of water.  The next day, the victim's bracelet was found in the ditch, and dirt and debris were found in her car.  A search warrant was executed for the petitioner's home.

After knocking and announcing their presence at the front and side doors to no avail, the officers broke into the side door of the petitioner's home.  They discovered the petitioner hiding under the couch and arrested him.  At the house, they found dirt and debris in the bathtub, as well as long blond-brown hair in the drain.  Upon further investigation, they found a window screen that had been pushed out onto the ground.  All of the other screens were intact in their respective windows.  The window with the missing screen had broken cobwebs, evidence of being recently opened.  Additionally, the officers found paint chips and flecks on the window sill and on the bricks below the window.  The paint had recently been chipped, because the wood where the paint was missing was lighter than wood on other areas of the house exposed to the weather.

Dr. Donna Schwartz-Watts, an expert in the field of forensic psychiatry, said that the victim's reaction to the officers when they appeared at the petitioner's house the night of the kidnaping and rape was normal.  The victim was desperately trying to escape and was not thinking rationally.  Dr. Schwartz-Watts averred that the victim was suffering from Post Traumatic Stress Disorder due to the incident.

After trying to work with five attorneys, the petitioner elected to proceed *pro se* and represented himself at trial.  The trial judge appointed Joseph McCulloch as standby counsel.  On April 10-14, 2000, the trial proceeded before the Honorable James C. Williams and a jury.  The jury convicted him of all three charges, criminal sexual assault, kidnaping, and armed robbery.  He was sentenced to 25 years for kidnaping, 25 years for first degree criminal sexual assault, and 15 years for armed robbery, to be served consecutively (amend. app. 1971-85).  The petitioner then unsuccessfully sought a new trial (*id*.).

4

***Direct Appeal***

Following the denial of his motion for a new trial, a timely notice of appeal was filed and served on April 17, 2000. On appeal, the petitioner again elected to proceed *pro se* citing his Sixth Amendment right under *Farretta v. California*, 422 U.S. 806 (1975) and Article I, Section 14 of the South Carolina Constitution (amend. app. 1987-88). Additionally, the petitioner attached an affidavit explaining, in detail, his reasons for proceeding *pro se* on appeal (*id.* 1989-90). The motion was granted on September 18, 2000 (doc. 32-4). Over the next three years, the petitioner filed at least 14 motions in South Carolina's appellate courts regarding his appeal, including four motions to stay his appeal, three of which were granted (*see* docs. 32-2 (m. to suspend appeal), 32-3 (notice of m.), 32-8 (notice of m.), 32-9 (m. for assistance of counsel ), 32-11 (m. to stay), 32-13 (m. to review transcript tapes), 32-14 (notice of m. and m. for permission to argue fact not in transcript), 32-15 (m. to suspend appeal), 32-18 (pet. for writ of mandamus), 32-20 (m. for new trial and m. to stay), 33-3 (pet. for writ of mandamus), 33-5 (pet. for rehearing), 33-8 (m. for writ of cert.), 33-11 (m. to be relieved as counsel on appeal)). The State responded to at least four of the motions, and both the South Carolina Court of Appeals and the South Carolina Supreme Court issued multiple rulings on these motions (docs. 32-5 (return), 32-6 (return), 33-1(return to m. to stay and pet. for new trial), 33-9 (return to pet. for writ of cert. re: court of appeals denial of pet. for writ of mandamus), 32-4 (order dated Sept. 18, 2000), 32-7 (order of the S.C. Ct. of App. dated October 27, 2000), 32-10 (order of the S.C. Ct. of App. dated Jan. 17, 2001), 32-12(order of the S.C. Ct. of App. dated Aug. 17, 2001), 32-16 (order dated Oct. 3, 2001), 32-17 (order dated Dec. 4, 2001), 32-19 (letter for S.C. S. Ct. transferring pet. for writ of mandamus to S.C. Ct. of App. dated Jul. 25, 2002), 32-21(letter from the Hon. James C. Williams re: transcript tapes, dated Jul. 26, 2002), 33-2 (order of the S.C. Ct. of App. dated September 13, 2002), 33-4 (orders dated Apr. 17 and Apr. 21, 2003), 33-6 (full panel review order from S.C. Ct. of App. denying writ of mandamus, dated

5

May 29, 2003), 33-7 (order dated June 5, 2003), 33-10 (order dated August 12, 2003), 33-12 (order dated Sept. 10, 2003)).  Due to the petitioner's inability to perfect the record on appeal, the Court of Appeals granted his request for additional assistance and ordered Tara D. Shurling to assist the petitioner in finalizing the Record on Appeal (*see* docs. 33-14, 33-16).  On March 3, 2005, the petitioner filed his *pro se* final brief of appellant, arguing as follows:

> 1.  Because a written order is a requisite to continue a criminal case beyond 180 days from the date of arrest, pursuant to the provisions of S.C. Const. Art V § 4, and there is no order in this case, the circuit court lacked original jurisdiction to entertain the appellants criminal case and sentence him, thus violating his rights under the S.C. Const. Art. I § 3, and under the 14th Amendment to the U.S. Const.

> 2.  Because the Appellants indictments are not filed with the clerk of court which violates Rule 3(c) SCRCrimp, the Circuit Court lacked original jurisdiction to entertain the Appellants criminal case, and sentence him thus violating his rights under the S.C. Const Art. I § 3, and under the 14th Amendment to the U.S. Const.

> 3.  Because the Appellants indictment for kidnapping did not sufficiently apprise him of what he had to meet at trial to prepare his defense the circuit court lacked subject matter jurisdiction to entertain this charge, and sentence him, thus violating his rights under the S.C. Const Art. I § 3, and under the 14th Amendment to the U.S. Const.

> 4. Because the circuit court did not adjudicate the Appellant's post trial motions by written notice, the S.C. Court of Appeals do not have subject matter jurisdiction to entertain the Appellant's appeal, thus violating his rights under the S.C. Const. Art. I § 3, and under the 14th Amendment to the U.S. Const.

6

5. Because the Appellant was not served a search warrant, it was an error for the trial court not to suppress the evidence from his home for a 4th Amendment violation.

6. Because the trial court judge took 5 jurors off the jury panel that the Appellant picked, and replaced them with 5 jurors that the Appellant struck, and set aside 5 of the Appellants strikes after a Batson hearing the Appellants Rights under the S.C. Const. Art. I § 3, and under the 14th Amendment to the United States Constitution was violated.

7. Because the trial court judge did not remove juror # 126 from the jury panel after he gave misleading information to the court in the jury selection process to get on the jury, Appellants rights under the S.C. Const. Art. I § 3, and under the 14th Amendment to the United States Constitution was violated

8. Because the trial court judge did not fully address the Appellants issues of a partial jury, the Appellants rights under the S.C. Const. Art. I § 3, and under the 14th Amendment to the U.S. Const. was violated.

9. Because the prosecutor Asst. Solicitor Kathryn Luck Campbell made improper references outside the evidence in the final closing argument, the Appellants rights under the S.C. Const. Art. I § 3, and under the 14th Amendment to the United States Constitution was violated.

10. Because the prosecutor Asst. Solicitor Kathryn Luck Campbell used improper references in the final closing argument, even after a valid judicial warning by the trial court, it was an error for the court not to grant the Appellant's motion for a mistrial.

(Amend. app. 2071-90). The State subsequently filed its final brief, and the petitioner filed a reply (amend. app. 2093-2131).

7

On September 15, 2005, the South Carolina Court of Appeals affirmed the petitioner's conviction and sentence. *See State v. Adams*, Op. No. 2005-UP-520 (S.C. Ct. App. Sept. 15, 2005) (doc. 34-8). Following denial of a Petition for Rehearing *en banc* on November 17, 2005, the South Carolina Court of Appeals issued the Remittitur on December 22, 2005 (amend. app. 2132-66; doc. 34-10).

***PCR***

On December 4, 2006, the petitioner filed an application for post-conviction relief ("PCR").  In his application, the petitioner alleged he was being held in custody unlawfully for the following reasons:

> 1) "I would contend that my waiver of trial counsel was not freely, knowingly, voluntarily and intelligently given to the court";
>
> 2) "I would contend that my waiver of appellate court counsel was not freely, knowingly, voluntarily, and intelligently given to the appellate court";
>
> 3) "I would contend that I was denied assistance of counsel on appeal to prepare my briefs";
>
> 4) "I would contend that I was denied assistance of trial counsel to aid me in preparing my defense for trial";
>
> 5) "I would contend that I was denied excess to the court to perfect my appeal";
>
> 6) "I would contend that my federal and state constitutional rights were violated by an inordinate delay on appeal";
>
> 7) "I would contend that my federal and state constitutional rights were violated when I was pro se on appeal was not allowed to review the tapes of my criminal trial to correct my transcript";

8) "I would aver that the S.C. Court of Appeals lacked subject matter jurisdiction to adjudicate my appeal";

9) "I would contend that the court reporter violated my 6th and 14th Amendment rights to the United States Constitution";

10) "I would contend that my 6th and 14th Amendment rights to the United States Constitution and my rights under Article I §§ 3 and 14 to the S.C. Constitution was violated by the law library being inadequate to prepare my briefs and arguments on appeal";

11) "I would contend that I was denied assistance of counsel to consult with prior to my competency hearing";

12) "I would contend that I was denied effective assistance of trial counsel at my pre-trial hearing";

13) "I would contend that I was denied effective assistance during voir dire";

14) "I would aver that I was denied effective assistance of counsel during the sentencing phase of my trial";

15) "I would contend that I was denied effective assistance of counsel on my direct appeal during the rehearing stage";

16) "I would contend that I was denied effective assistance of counsel on appeal, when my paid counsel abandoned me on appeal"; and

17) "I would contend that I was denied due process of the law by not being advised by counsel or the court or by any other means that I would take my case to the U.S. Supreme Court if I was denied relief on appeal."

9

(Amend. app. 1533-54, 1578).  In response, the State, represented by Brian Petrano, filed a return requesting an evidentiary hearing on the matter (*id.* 1579-85).

On March 19, 2008, an evidentiary hearing was conducted before the Honorable James R. Barber at the Richland County Courthouse (*id*. 1586).  Two days prior to the hearing, the PCR court questioned the petitioner regarding his desire to proceed *pro se*, after which the PCR court permitted the petitioner to again represent himself (*id*. 1587-92).  At the evidentiary hearing, both the petitioner and his advisory counsel, Joseph McCullough, testified (*id*. 1670-1750).  Thereafter, the PCR court took the matter under advisement and, on June 12, 2008, issued an order denying the petitioner relief (*id*. 1763-94).  On June 12, 2008, the petitioner filed a Rule 59(e) motion, which was denied on July 14, 2008 (*id*. 2023-62, 2063).

### PCR Appeal

Following the denial of his Rule 59(e) motion, the petitioner timely sought appellate review (*see* Notice of Appeal in #2006-CP-40-7169, doc. 34-11).  Subsequently, the Supreme Court of South Carolina issued an order warning the petitioner about the dangers of proceeding *pro se* and requesting that the petitioner inform the court whether he wished to continue litigating *pro se* or proceed with counsel (*see* Order of the S.C. Sup. Ct. re: Rep. on Appeal, dated July 17, 2009, doc. 34-12).  Two weeks, later, the petitioner responded to the order indicating he wished to proceed *pro se*[3] (*see* Letter to the S.C. S. Ct. re: Rep., dated July 31, 2009, doc. 69-1).

In his petition for writ of certiorari, the petitioner raised the following issues:

> 1. Whether it was error by the PCR court judge not to find that petitioners waiver of counsel was unconstitutional when petitioner waived counsel predicated on no lawyer conducting an investigation for him to prepare a defense.

---

[3] Attorney Bernice Jenkins was retained for the limited purpose of compiling the PCR appeal appendix.  After doing so, she requested to be relieved (*see* m. to be relieved as counsel dated Dec. 13, 2010, doc. 34-15).  The S.C. Supreme Court granted her request on December 22, 2010 (doc. 34-16).

2. Whether it was constitutional error for the PCR court not to grant petitioner relief when the respondent could not produce a transcript to show that petitioners waiver of counsel was constitutionally valid.

3. Whether it was error by the PCR court not to entertain the petitioners claim of waiver of counsel because his competency was in question.

4. Whether it was error by the PCR court to find that petitioner waived appellate court counsel, when the respondent could not prove a waiver.

5. Whether the PCR court committed error by finding a waiver of counsel on appeal, when the waiver was predicated a violation of the law by the S.C. Appellate Defense Commission.

6. Whether it was error by the PCR court not to find a constitutional violation, when petitioner paid a lawyer in part for assistance on appeal, and no assistance was given.

7. Whether it was error by the PCR court not to find a constitutional violation, when petitioner was denied free excess to the courts.

8. Whether it was error by the PCR court not to find a constitutional violation for an inordinate delay on appeal.

9. Whether it was error by the PCR court not to find a constitutional violation, when petitioner was kept from hearing the tapes of the trial to correct the transcript in his official capacity as counsel on appeal.

10. Whether the S.C. Court of Appeals had subject matter jurisdiction, when there was no written court order denying the petitioners post trial motions.

11. Whether the PCR court erred by not finding a constitutional violation, when his request to send the transcript to him was ignored as counsel on appeal.

12. Whether the PCR court erred by not finding a constitutional violation when petitioner had to prepare his brief on appeal with an inadequate law library.

13. Whether it was error by the PCR court requiring the petitioner to show prejudice when petitioner was denied counsel at critical stages of the criminal justice process.

14. Whether it was error by the PCR court not to find a constitutional violation, when the prosecution set the trial date in violation of a written court order.

(Pet. for Writ of Cert. in #2006-CP-40-7169, doc. 34-17). On March 24, 2011, the State filed a return to the petition (doc. 34-18). Certiorari was denied on November 14, 2012 (doc. 34-19), and the remittitur was issued on December 3, 2012 (doc. 34-20).

## FEDERAL PETITION

In his federal petition filed in the instant case, the petitioner makes the following claims:

> **Ground One:** The Solicitors improper comments and actions during the closing arguments was objectively unreasonable to clearly established federal law as determined by the U.S. Supreme Court.
>
> **Supporting Facts:** The prosecutor in my case told the jury during the closing arguments that I brutally raped and kidnapped another woman. It was a blatant lie, I had never been convicted of the charges prior to trial. She was also showing the jury pictures from my prior case, and these pictures were not admitted into evidence. The curative instruction was not sufficient to cure the damage of her comments, and actions and my guilt was not overwhelming because there is no DNA evidence in the case and no witnesses.
>
> **Ground Two:** The state court decision on my 6th Amendment waiver of counsel claim for not having an "investigation" was objectively unreasonable to clearly established federal law as determined by the U.S. Supreme Court.
>
> **Supporting Facts:** During my case I had "SIX" different lawyer (FACT) None of them did an investigation for me, (FACT). I had to waive counsel, and represent myself and hire me an investigator to prepare a defense for trial. The Chief Administrative judge had to order that an investigation be done for me because nobody would help me. The Attorney General could not produce any investigative report out the PCR hearing from any of the six lawyers I had. This is a shame, and a waiver under these circumstances is not constitution (sic).

12

**Ground Three:** The State Court decision on the Petitioners Unconstitutional waiver of Appellate Court counsel was objectively unreasonable to clearly established Federal Law as determined by the U.S. Supreme Court.

**Supporting Facts:** I filed a motion to proceed pro se on Appeal, and the Court granted the motion without advising me of The pitfalls or dangers on appeal.  Likewise No other person advised me other, and I was prejudiced by raising a lot of issues not cognizable on appeal, inter alia, The State Court had no evidence to suggest That I was advised and started because I was advised of The dangers in the lower Court, I need "not" be advised on appeal again.

**Ground Four:** The State Court decision on The Petitioners being denied counsel during critical stages was objectively unreasonable To clearly established Federal Law as determined by The U.S. Supreme Court.

**Supporting Facts:** The Petitioner avers That he was "Not" appointed counsel during different critical stages of The criminal process, to wit, The Blair hearing that was held on the date of the trial, The pre-trial motion hearing; during voir dire; during The Sentencing Stage "after" trial; The rehearing stage on appeal; and when his case was remanded back to the lower court on appeal, The court "never" stated that counsel was appointed, but holds "even if I was denied counsel, I can't show prejudice?? I don't need to show prejudice if I was denied counsel, and I was denied counsel.

.

**Ground Five:** The state court decision not granting The Petitioner relief on his involuntary waiver of counsel claim for not having a transcript of the waiver hearing was objectively unreasonable To clearly established federal Law as determined by The U.S. Supreme Court.

**Supporting Facts:** The State avers That I waived my 6th Amendment Right to trial counsel, but They "don't" have a transcript of The waiver hearing To show That The Court advised me of the dangers and pitfalls of proceeding pro se,

13

and all The Constitutional Jurisprudence surrounding a valid waiver was met. The Respondent is attempting to use some court orders To show a valid waiver but The orders are Notwithstanding to show a valid waiver. The judge who presided over The waiver hearing was The same judge out The PCR hearing and "he" said "THE PETITIONER IS RIGHT, I DID NOT ASK PETITIONER WHY HE WAS WAIVING COUNSEL! (citations omitted).

**Ground Six:** The State Court decision not granting The Petitioner relief on his involuntary waiver claim for The court questioning his competency was objectively unreasonable to clearly established Federal Law as determined by The U.S. Supreme Court.

**Supporting Facts:** The State said I was competent "before" Trial, but on The day of my Trial, They tried to have me examined by doctors saying I was "not" competent, and They had a "Blair hearing" just before my trial, and That is a "competency hearing."  I can't have a valid waiver, if my competency is in question.

**Ground Seven:** The State Court decision not granting the Petitioner relief on his involuntary waiver claim for the S.C. Appellate Court defense commission involving itself in The appeal against The Law was objectively unreasonable to clearly established Federal Law as determined by The U.S. Supreme Court.

**Supporting Facts:** The S.C. Appellate Court defense Commission violated S.Code Ann. § 17-4-70 and illegally involved itself my appeal. I did not sign a affidavit of being indigent, and I did "not" ask for there help, and I even filed a lawsuit against them and still could not get rid of Them. I waived counsel to get rid of them. Therefore, The waiver was invalid.

**Ground Eight:** The State Court decision not granting The Petitioner relief on his claim That his attorney abandoned him

14

was objectively unreasonable To clearly established federal Law as determined by The U.S. Supreme Court.

**Supporting Facts:** Attorney Harry L. Devo was paid in part to represent me on appeal. My mother send him The funds, but he never done anything.

**Ground Nine:** The State Court decision not granting The Petitioner relief on his claim of a inordinate delay on appeal was objectively unreasonable to clearly established Federal Law as determined by The U.S. Supreme Court.

**Supporting Facts:** My appeal took "5" years. The only Time I asked for my appeal to be held in abeyance, was for things That The State was putting me through. All of The delays with The transcripts, and The Courts is attributable To the State.

**Ground Ten:** The State Court decision not granting The petitioner relief on his free excess To The court claim, was objectively unreasonable to clearly established Federal Law as determined by The U.S. Supreme Court.

**Supporting Facts:** I had to pay for all my mail going To The Courts. Nothing was free at all. I had to pay postage and everything.

**Ground Eleven:** The State Court decision not granting The Petitioner relief on his 6 & 14 Amendment violation claim For not being able to challenge The Authenticity of The transcript, was objectively unreasonable to clearly established Federal Law as determined by The U.S. Supreme Court.

**Supporting Facts:** My transcripts are "blanked out" and The wording is not right. I challenged The authenticity of The transcript to hear The tapes of the trial to make the necessary corrections within The rules of The Court, The S.C. Supreme Court Told The Court reporter to "HOLD" the tapes of The trial for me to review, but The court reporter "destroyed" The tapes and I could not correct my transcript.

**Ground Twelve:** The State Court decision not granting The Petitioner relief on his claim of The Court reporter violating his 6th & 14th Amendment right To The U.S. Const. for sending his transcript To The S.C. Appellate Court defense Commission was objectively unreasonable to clearly established Federal Law as determined by The U.S. Supreme Court.

**Supporting Facts:** I was pro se on appeal by order of The Court. I specifically Told The Court reporter to send my transcript to me. She sent it To The S.C. Appellate defense, who I was suing and that was a conflict of interest.

**Ground Thirteen:** The State Court decision not granting The Petitioner relief on his claim of a 6 & 14th Amendment violation For The Solicitor setting The Trial date by herself was objectively unreasonable to clearly established Federal Law as determined by The U.S. Supreme Court.

**Supporting Facts:** I was pro se by order of The Court. I was not ready for trial because The officers at The jail took my trial preparation papers. The Solicitor set The trial date without "me" knowing anything about it, and I had a court order For me & her. The playing field must be even to have a fair trial. The State encroached on my pro se rights.

On May 13, 2013, the respondent filed a motion for summary judgment. By order filed May 14, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed a response to the motion for summary judgment on July 15, 2013.

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is

deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

### Exhaustion

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17–27–10, *et seq*.; S.C. Code Ann. § 17–27–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR

17

court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[4]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for

_____

[4]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

As set forth by the respondent, Grounds One through Five, Seven, Nine, and Ten of the federal petition are actually exhausted (m.s.j. 23-24, doc. 30). Moreover, Grounds Six, Eight, Eleven, Twelve, and Thirteen are technically exhausted as state court remedies are no longer available. *See Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (stating the exhaustion requirement for claims not fairly presented in state court is technically met when exhaustion is either unconditionally waived by the state or when a state procedural rule would bar the claim if it was later presented to the state court), *overruled on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir.2011).

### Procedural Bar

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those

> decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

Ground Six is procedurally barred.  Specifically, while the petitioner presented this claim to the PCR court via allegation 11-A-3 (amend. app. 1546), the PCR court found this matter was procedurally barred, citing to South Carolina Code Section 17-27-20(b), *Simmons v. State*, 215 S.E.2d 883 (S.C. 1974), and *Ashley v. State*, 196 S.E.2d 501 (S.C. 1973), as the issue could have been raised on direct appeal (amend. app. 1775-76). "[Federal Courts] will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman*, 501 U.S. at 729.

Similarly, the petitioner's Ground Eight is procedurally barred.  The claim was raised by the petitioner via allegation 10-Q in his PCR application (amend. app. 1543). However, the PCR court, citing to *Janasik v. Fairway Oaks Villas Horizontal Property Regime*, 415 S.E.2d 384 (S.C. 1992) and *Lyles v. BMI, Inc.*, 355 S.E.2d 282 (S.C. Ct. App. 1987), found that the petitioner's failure to present evidence on the issue indicated a voluntary waiver of the claim (amend. app. 1793-94). Furthermore, while the petitioner filed a Rule 59(e) motion in his PCR action (*see id.* 2023-62), he again neglected to note the PCR court's failure to rule on the merits of this claim.  Thus, even if the issue is not procedurally barred under the doctrine of waiver, it is procedurally defaulted due to the petitioner's failure to properly present the claim on appeal as required under *Marlar*, 653 S.E.2d at 267 (finding that if the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review).

Grounds Eleven and Twelve are also procedurally barred.  The petitioner raised these issues to the PCR court via allegations 11-G-1 and 11-I-1 (amend. app. 1551-52).  Specifically, the PCR court found each of these matters were procedurally barred,

citing to South Carolina Code Section 17-27-20(b), *Simmons*, 215 S.E.2d 883, and *Ashley*, 196 S.E.2d 501, as the issues could have been raised on direct appeal (amend. app. 1787).  As such, these issues are procedurally barred from federal habeas review. *See Coleman*, 501 U.S. at 729.

Lastly, Ground Thirteen was raised by the petitioner to the PCR court via allegation 10-S-1 (amend. app. 1578).  The PCR court, citing to *Janasik*, 415 S.E.2d 384, and *Lyles*, 355 S.E.2d 282, found that the petitioner's failure to present evidence on the issue indicated a voluntary waiver of the claim (amend. app. 1793-94).  Furthermore, while the petitioner filed a Rule 59(e) motion in his PCR action (*id.* 2023-62), he again neglected to note the PCR court's failure to rule on the merits of this claim.  Thus, even if the issue is not procedurally barred under the doctrine of waiver, it is procedurally defaulted due to the petitioner's failure to properly present the claim on appeal as required under *Marlar*, 653 S.E.2d at 267.

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)).  To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 750).  A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The petitioner argues that failure to consider these claims will result in a fundamental miscarriage of justice based upon his actual innocence (resp. to m.s.j. 6, 8-18, doc. 57).  As will be discussed below with regard to Ground One, however, given the overwhelming evidence of his guilt, the petitioner cannot establish a miscarriage of justice so as to overcome the procedural bars.

***Merits***

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is

22

> controlling as to law and fact or (b) if no such controlling
> decision exists, "the state court's resolution of a question of
> pure law rests upon an objectively unreasonable derivation of
> legal principles from the relevant [S]upreme [C]ourt precedents,
> or if its decision rests upon an objectively unreasonable
> application of established principles to new facts." *Green v.
> French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words,
> habeas relief is authorized only when the state courts have
> decided the question by interpreting or applying the relevant
> precedent in a manner that reasonable jurists would all agree
> is unreasonable." *Id.* When a petitioner has properly presented
> a claim to the state court but the state court has not adjudicated
> the claim on the merits, however, our review of questions of law
> and mixed questions of law and fact is *de novo*. *See Jones v.
> Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying
> pre-AEDPA *de novo* standard of review to claims of ineffective
> assistance of counsel that were properly raised, but not
> adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

### Ground One

In the petitioner's first ground for relief, he argues the prosecutor in her closing argument at his trial made improper comments and reference to a previous incident in which the petitioner was charged with raping and kidnaping another woman. The petitioner objected at trial and presented this issue in his direct appeal in questions nine and ten (amend. app. 2085-89). The Court of Appeals addressed the argument on the merits in its opinion affirming the petitioner's conviction.

At trial, the petitioner stated that he that he wanted his mother to testify about coming to his house when a woman he had previously been accused of raping, Weber, was there. The trial judge noted that the State had originally indicated they would offer Weber's testimony under Rule 404(b), SCRE, but no longer intended to call her. The petitioner indicated he still wanted Weber to testify. At that point, the attorney advising the petitioner during his *pro se* representation stated that he had warned the petitioner of the dangers of "opening the door" regarding the Weber incident but stated the petitioner felt the matter was relevant to his conspiracy theory regarding the officers investigating his current case, as

they had also investigated the prior case. The trial judge warned the petitioner extensively of the danger of "opening the door" regarding the Weber charge (amend. app. 1094-1101).

During his cross-examination of Officer Thomas of the Columbia Police Department, the petitioner elicited testimony regarding the Weber incident, which Officer Thomas had investigated in 1997 (*id.* 1150-70). During her redirect, the solicitor indicated that she wished to question Officer Thomas regarding the Weber matter, noting that the petitioner had "opened the door" to such testimony (*id.* 1219). The petitioner objected. The trial judge dismissed the jury from the courtroom and heard from the solicitor and the petitioner. The trial judge ruled that the State could examine the witness regarding his investigation of the Weber matter, as the petitioner had elicited testimony from Officer Thomas in an effort to show that the officer ignored evidence and did not do a proper investigation in that case to support his theory that the investigating officers had conspired against him in the current case (*id.* 1219-32).

During her examination of Officer Thomas, the solicitor questioned him regarding the investigation into the Weber case and execution of a search warrant. She further elicited testimony from Officer Thomas regarding the petitioner's indictment for criminal sexual conduct in the first degree and kidnaping in the Weber case and his plea to simple assault "[b]ecause of perceived credibility problems" with the case (*id.* 1234-43). On re-cross, the petitioner again elicited testimony regarding the Weber matter (*id.* 1243-50).

During her closing argument, the solicitor stated, in pertinent part:

> And we were limited to how much we could get into it, but is before you now, ladies and gentlemen, is we know that on July the 4th, 1997, another young girl accused this man of the same thing. Criminal sexual conduct in the first degree and kidnapping.

(*Id.* 1493). At that point, the petitioner objected on the ground that he was not charged with criminal sexual conduct in the first degree. The solicitor responded that he was (*id.*. 1493-94). The trial judge instructed as follows:

24

> All right, well, the jury will remember what evidence has been introduced and you will make your decisions based on that (sic) elements and not what either one of these lawyers tell you. Go ahead.

(*Id.* 1494).

> The solicitor then argued:

> Thank you, Your Honor. We also know that in that case, a search warrant was also executed. Investigator Thomas was able to testify before you to this extent – that she sustained injuries. That photographs were taken of her injuries and that those injuries were consistent with items that were found in the search warrant at his house where it also occurred. His house where he brutally raped and kidnapped another young woman.

(*Id.*). The petitioner objected again on the basis that he had not been convicted of those charges and "the injuries on the female was aggravated circumstances" (*id.*). He then argued "improper reference" (*id.*). The trial judge then stated:

> I think it is an improper reference, counselor. I think you've gone as afar as you need to go in that direction, but the jury will remember the evidence that has been allowed to be introduced in this case and the limiting instructions I gave the jury previously, in which I will give them again in a minute in regard to this testimony.

(*Id.* 1494-95).

> The solicitor subsequently argued:

> And the judge will instruct you. But in that case, the defendant brought out on his cross-examination of Tommy Thomas that this young girl had been in trouble as a young teen, that these charges were brought, but because she's been in trouble as a young teen, because she had been to his house before, because she'd had a crush, she'd even written him a letter, when she'd been on work release, and because it was her word and her word alone, the system failed her. The system ignored her injuries. The system ignored her totally and pled this case out and put him back in the community. And what did that do? It empowered him. It vindicated Stanley The petitioner and it gave him license to go out and find his next victim.

25

(*Id.*).  At that point, the petitioner again objected (*id.* 1495).  The jury was then dismissed, and the trial judge instructed the solicitor that she had argued improper inferences. He instructed the solicitor not to mention the prior incident again (*id.* 1495-97).

> The trial judge subsequently gave the following instruction to the jury:
>
> Now ladies and gentlemen, I instructed you earlier, and I instruct you again, that there was reference made during this trial to the involvement of the defendant in another crime.  This evidence was admitted for a limited purpose and I instruct you now that you must not consider this evidence for an purpose, except for the purpose for which it was admitted.
>
> This evidence was admitted and may be considered by you, the jury, if you conclude it to be true only for the purpose of determining the credibility of various witnesses in this trial and for no other purpose.  You cannot and must not consider evidence of this other crime as evidence of guilt for the charge for which the defendant is being tried in this case.  You may give this evidence such weight and such value if any to which you may find it is entitled on the sole issue of credibility, but not as any evidence of his guilt for the crime for which he is now being charged.

(*Id.* 1512).

> In the petitioner's direct appeal, the Court of Appeals found as follows, in pertinent part:

> Adams appeals on the grounds that the solicitor's comments in her closing argument were improper and that she showed inappropriate pictures. Adams argues that he should be granted a mistrial based on the comments regarding the Weber incident. We disagree.
>
> Not every improper argument requires reversal as long as it is not prejudicial to the defendant. *State v. Cooper*, 334 S.C. 540, 514 S.E.2d 584 (1999). The trial judge is given considerable discretion in considering the scope and appropriateness of the closing argument of the solicitor. *State v. Durden*, 264 S.C. 86, 212 S.E.2d 587 (1975). The control of arguments is usually within the sound discretion of the trial judge, and that discretion will not be questioned unless there is evidence of clear abuse. *State v. Stroman*, 281 S.C. 508, 514, 316 S.E.2d 395 (1984). The trial judge did not err by not declaring a mistrial.

The Solicitor must stay within the record and its reasonable inferences. *State v. Linder*, 276 S.C. 304, 278 S.E.2d 335 (1981). The judge warned Adams of "opening the door" to the Weber incident. However, on cross-examination of Officer Thomas, Adams insisted upon asking Officer Thomas about the Weber case. The court then gave the state permission to question Officer Thomas regarding Weber, because Adams had "opened the door". Selective testimony about Weber was heard during trial.

Curative instruction to disregard incompetent evidence and not to consider it during deliberation is deemed to have cured any alleged error in its admission. *State v. Kesley*, 331 S.C. 50, 502 S.E.2d 63 (1998). During the closing argument, the state presented: "And we were limited to how much we could get into it, but is before you now, ladies and gentlemen, as we know that on July the 4th, 1997, another young girl accused this man of the same thing. Criminal sexual conduct in the first degree and kidnapping." Adams objected, arguing he was not charged with criminal sexual conduct in the first degree. The State explained he was charged with such, and the trial court said, "[T]he jury will remember what evidence has been introduced and you will make your decision based on those elements and not what either one of these lawyers tell you." The State was allowed to proceed. The solicitor referencing Adams' house said, "[h]is house where he brutally raped and kidnapped another young woman." Adams objected again. The trial court agreed the reference was improper, and reminded the jury of his previous limiting instruction making it clear that he would again give a limiting instruction in the jury charge.

Assuming error by the Solicitor, the trial court ruled with Adams and gave a curative instruction. Such an instruction is deemed to have cured the alleged error. In light of the entire record, the instruction adequately cured any improper arguments. The record reveals overwhelming evidence of Adams' guilt. Furthermore, because Adams fails to demonstrate both error and prejudice, the trial court did not abuse its discretion in denying the motion for mistrial.

Adams argues that the State showed pictures of Weber during the closing argument that were not introduced into evidence. Upon examination of the record based on the cite that Adams provided, there were no pictures introduced in the closing argument.

We conclude that any error was harmless. "Whether an error is harmless depends on the circumstances of the particular

case. No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." *State v. Mitchell*, 286 S.C. 572, 573 336 S.E.2d 150, 151 (1985). Abundant evidence in the record points to Adams' guilt, and, thus, any defects in the State's closing argument would not have affected the outcome of the trial. *Id.* ("Error is harmless when it 'could not reasonably have affected the result of the trial.'") (quoting *State v. Key*, 256 S.C. 90, 93-94, 180 S.E.2d 888, 890 (1971)).

*State v. Adams*, Op. No. 2005-UP-520 (S.C. Ct. App. Sept. 15, 2005) (doc. 34-8).

In South Carolina, the trial judge is vested with considerable discretion in considering the range and propriety of the closing argument of the solicitor. *State v. Durden*, 212 S.E.2d 587, 590 (S.C. 1975). A decision by the trial judge in such regard will not be overturned absent a showing of an abuse of discretion amounting to an error of law that prejudices the defendant. *State v. Copeland*, 468 S.E.2d 620, 624 (S.C. 1996). Pursuant to *State v. Brisbon*, "(t)he test of granting a new trial for alleged improper closing argument of counsel is whether the defendant was prejudiced to the extent that he was denied a fair trial." 474 S.E.2d 433, 438 (S.C. 1996) (citation omitted). *See also State v. Huggins*, 481 S.E.2d 114, 116 (S.C. 1995) (an allegedly improper argument should be grounds for reversal only when the argument has "so infected the trial with unfairness as to make the resulting conviction a denial of due process."). It is a defendant's burden to prove any alleged error and prejudice so as to deny a fair trial. *State v. Coleman*, 389 S.E.2d 659, 661 (S.C. 1990). On appeal, South Carolina courts must review any alleged improper comments of the solicitor in the context of the entire record. *State Tucker*, 478 S.E.2d 260, 267-68 (S.C. 1996). South Carolina law on the issue of improper references in closing arguments is in accord with federal law as determined by the Supreme Court of the United States. *See Darden v. Wainwright*, 477 U.S. 168, 181-83 (1986) (finding no due process violation under the *Donnelly* test because the prosecutor's comments were an invited response to the defendant's argument; there was overwhelming eyewitness and circumstantial evidence of guilt; and the trial court instructed the jurors that argument was

28

not evidence); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (holding that in order for a solicitor's comments to warrant a new trial, the defendant must show that the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process).

The Court of Appeals' decision was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  Furthermore, the decision was not based on an unreasonable determination of the facts.  The petitioner failed to show that the solicitor's comments so infected the trial with unfairness as to make his resulting conviction a denial of due process. As the Court of Appeals found, despite clear warnings from the trial judge, the petitioner opened the door for the State to present certain evidence regarding the Weber matter. Evidence was presented showing that the petitioner was charged with criminal sexual conduct in the first degree and kidnaping in the Weber matter, and he later pled to simple assault.  The State was allowed to question Officer Thomas as to his investigation, including certain evidence supporting Weber's allegations, in order to counter the petitioner's theory that the investigating officers in the Weber case were conspiring against him in his current case.  Assuming the solicitor went too far in her closing argument by arguing improper inferences in her closing argument, the trial judge upheld the petitioner's objection and gave a curative instruction.  As for the petitioner's allegation that the solicitor showed the jury pictures from the Weber case that were not admitted into evidence, a review of the record shows that in the closing argument the solicitor referenced photographs taken of Weber's injuries and that those injuries were consistent with certain items found pursuant to the search warrant executed at the petitioner's home (amend. app. 1494).  This comment was consistent with the testimony of Officer Thomas when he was shown the pictures by the solicitor (*id.* 1234-43).  As the Court of Appeals found, there is no indication in the record that the solicitor showed the photographs to the jury.  Moreover, as found by the Court of Appeals, any error by the solicitor in arguing improper inferences was harmless given the overwhelming evidence of the petitioner's guilt, which included the

victim's statement, her documented physical injuries, her bracelet found in a ditch, and other evidence found in the petitioner's home that supported the victim's allegations. The petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. Based upon the foregoing, this ground for relief should be denied.

### Ground Two

In Ground Two, the petitioner alleges the state court's denial of relief on his involuntary waiver of trial counsel claim related to trial counsel's purported failure to conduct an investigation "was objectively unreasonable to clearly established federal law as determined by the U.S. Supreme Court." The petitioner presented this claim in his PCR application in allegation 11-A-1 (amend. app. 1544-45). The PCR court ruled on the merits of the claim, and the petitioner raised the claim again via question I of his petition for writ of certiorari.

In denying relief on this claim, the PCR court found as follows:

The Applicant alleges that he did not voluntarily waive his right to trial counsel. The Applicant argued that his waiver was involuntary because he only elected to proceed *pro se* because no lawyer would conduct a meaningful investigation on his behalf to prepare a defense for trial. An order signed by me (as Chief Administrative Judge) dated August 13, 1999 ordered that the case be tried by October 31, 1999 (ROA pp. 891-92 (the order). That order also referenced a psychiatric evaluation in March and May of 1999. In that order, Applicant was allowed to represent himself while a public defender with the Richland County Public Defender's office serving as legal advisor. However, pursuant to an order dated September 9, 1999. I (as Chief Administrative Judge) noted that Applicant had filed a lawsuit against the Richland County Public Defender's office and a grievance against his legal advisor and Applicant requested that the advisor be relieved. As Chief Administrative Judge I granted Applicant's request. [ROA pp. 893-894 (order of Judge Barber (as Chief Administrative Judge)]. Orders of September 29, 1999 and October 13, 1999 referenced evaluations of Applicant regarding his competency while designating a trial in October, 1999 (ROA pp. 895-896 (the orders).

30

By order dated April 6, 2000 Joseph McCulloch was appointed as standby counsel for the Applicant. The Order further sets out the numerous appointments of counsel for Applicant. Mr. Adams was initially appointed an attorney with the Richland County Public Defender's office following Applicant's arrest. Subsequently, that attorney was relieved and a private attorney was appointed. On February 23, 1999, that private attorney was relieved and Mr. Tommy Evans of the Richland County Public Defender's office was appointed to assist Applicant. On September 28, 1999 Mr. Evans was relieved and Applicant was permitted to proceed *pro se.* On October 18, 1999 Applicant requested appointment of new counsel. That request was granted on October 22, 1999 with the appointment of Mr. Hemphill Pride. The order reflects that on November 16, 2009 Applicant's and at Mr. Pride's request, Mr. Pride was relieved. In December, 1999, Mr. Marvin Mullis was appointed to represent Applicant. Mr. Mullis was thereafter relieved in January, 2000 after his services were deemed unsatisfactory by Applicant. At that time, Applicant elected to represent himself. On January 13, 2000, Ms. Debra Chapman was appointed advisory counsel. In February, 2000 she was relieved. Subsequently, Mr. McCulloch was appointed to assist Applicant. (ROA pp. 899-908 (Order of Judge Williams dated April 6, 2000).

Prior to Applicant's trial, the trial judge on March 29, 2000 heard Applicant's motion for a speedy trial. In reviewing the motion, the Court noted the manner in which the case had proceeded, particularly noting mental health evaluations, a doctor who was to testify had suffered a heart attack, numerous attorneys had been appointed to represent Applicant only to be subsequently fired from the case, and Applicant himself filed a motion for a continuance just prior to the April 10 trial, which motion was later withdrawn. The trial judge in denying Applicant's motion determined that there were no unreasonable basis why the case had not proceeded and that there had been no showing of prejudice by Applicant (March 29, 2000 transcript, ROA p. 67, line 19 - p. 84, line 3).

Regardless, there was no error in that Applicant, during the March 29, 2000, hearing prior to his April 10, 2000 trial, asked for another continuance on the ground that he was unable to "put on a meaningful defense" (ROA p. 85, lines 14--19). The trial judge again referenced the numerous attorneys that had been appointed to represent Applicant and denied any further continuance (ROA p. 86, line 13 - p. 90, line 10).

31

This Court notes that the Applicant seemed satisfied with an attorney serving as "advisory counsel," but that the Applicant specifically rejected having Mr. Joseph McCulloch being appointed as counsel. For example, the Applicant at first requested to have McCulloch as the Applicant's "assistant," but later accepted and presented no objections to the trial court's assignment of McCulloch as "advisory counsel" only (ROA p. 36-45, Pretrial transcript p. 95-104).

> THE COURT: NOW THE ORDER APPOINTING MR. MCCULLOCH HAS BEEN EFFECTIVE FOR SOME TIME AND I THINK MR. MCCULLOCH HAS BEEN ASSISTING FOR SOME WEEKS, ALTHOUGH IT WAS ONLY IN RESPONSE TO MR. MCCULLOCH'S REQUEST THAT I ISSUED THE ORDER SETTING OUT EXACTLY WHAT HIS RESPONSIBILITIES ARE. BUT, AND YOU AGREE, THAT MY ORDER DOES REFLECT THE FULL GRANTING OF YOUR REQUEST, DOES IT NOT?
>
> MR. ADAMS: IT DOES, SIR.
>
> THE COURT: ALL RIGHT, SIR, AND I UNDERSTAND THE LATENESS OF THAT ORDER, BUT WE NEED TO UNDERSTAND THAT MR. MCCULLOCH WAS APPOINTED QUITE SOME TIME PRIOR TO THAT ORDER AND HAS BEEN ASSISTING YOU SINCE MS. CHAPMAN WAS RELIEVED. ISN'T THAT RIGHT?
>
> MR. ADAMS: YES.
>
> Trial transcript p. 20 L. 8-22.
>
> THE COURT: MR. ADAMS, YOU WERE ADVISED BY ME IN JANUARY HOW FOOLISH IT IS FOR YOU TO TRY TO DEFEND YOURSELF.
>
> MR. ADAMS: NO. I DON'T HAVE A PROBLEM - - -
>
> THE COURT: BUT YOU HAVE INSISTED -- YOU HAVE INSISTED THAT YOU WANT TO DEFEND YOURSELF.
>
> MR. ADAMS: I DO.
>
> Pretrial transcript p. 167 L. 24 - p. 168 L. 4, ROA p. 86 L. 24 - p. 87.

> The Applicant, on numerous occasions expressed his satisfaction in representing himself - "LADIES AND GENTLEMEN OF THE JURY, I'M NOT GUILTY OF THESE PENDING CHARGES AGAINST ME. I'VE ELECTED TO REPRESENT MYSELF BECAUSE NOBODY CAN TELL YOU WHAT HAPPENED THAT NIGHT BETTER THAN ME. BECAUSE I WAS THERE." Trial transcript p. 113 L. 11-15.
>
> > MR. ADAMS:  IF IT WOULD PLEASE THE COURT, I WOULD ALSO LIKE TO KNOW WHEN WOULD BE A PROPER TIME IF I MAY DISCLOSE TO THE COURT [JURY] THE DUE PROCESS OF MY CLIENT. AND I WANT EVERYBODY IN HERE TO KNOW THAT I'M NOT CRAZY. I'M USING MY CLIENT AS MYSELF BECAUSE I'M REPRESENTING MYSELF PRO SE. Trial transcript p. 25, ROA p. 92.
>
> This Court also finds the several orders signed by me while Chief Administrative Judge for the Court of General Sessions for the Fifth Circuit (ROA p. 891-892, 893-894) determined the Applicant was competent to stand trial and represent himself, was aware of the consequences of self-representation and had voluntarily elected to proceed *pro se* and conduct himself accordingly.

(Amend. app. 1769-73).

"The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807 (1975).  "[C]ourts must take care not to force counsel upon a defendant, because in addition to the right to the assistance of counsel, the Sixth Amendment implicitly provides an affirmative right to self-representation." *United States v. Singleton*, 107 F.3d 1091, 1095–96 (4th Cir.1997) (citing *Faretta*, 422 U.S. at 806). A defendant may waive his right to counsel; however, a waiver of counsel "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)

33

(citation omitted).  Although no "precise procedure or litany for this evaluation" is required, the court must consider the record as a whole, including "the defendant's background capabilities and understanding of the dangers and disadvantages of self-representation." *Singleton*, 107 F.3d at 1097–98.

As argued by the respondent, a review of the record shows the state court was not unreasonable in denying the petitioner relief under § 2254(d)(1) since the PCR court found, as a factual matter, that the petitioner's waiver was not predicated upon a failure to investigate as he claimed in PCR, but was instead based upon his desire to proceed *pro se.*  The PCR court cited the numerous times the petitioner was appointed counsel only to fire counsel and request to proceed *pro se*.  Moreover, the PCR court cited the trial judge's statement prior to trial noting that he advised the petitioner "how foolish it is for you to try to defend yourself."  Further, the trial judge specifically stated at trial: "[J]ust let the record reflect that Mr. Adams has chosen to represent himself.  This court has had a number of conversations with Mr. Adams as well as prior courts determined that he has fully, knowingly and intelligently waived his right to an attorney" (amend. app. 18-19).  As argued by the respondent, the state court's finding that the petitioner's waiver was not predicated upon a failure to investigate is perhaps best illustrated by the fact that the petitioner actually refused Mr. McCulloch's representation and only agreed to let Mr. McCulloch stay on in an advisory role.  Furthermore, as the PCR court expressly found the petitioner's testimony was not credible in its order denying relief, the state court, in finding the petitioner's waiver of counsel was voluntary on these facts, did not unreasonably apply clearly established federal law when it denied relief on this claim.  Accordingly, this ground for relief should be denied.

### Ground Three

In Ground Three, the petitioner alleges that the state court's denial of relief on his waiver of appellate counsel claim "was objectively unreasonable to clearly established federal law as determined by the U.S. Supreme Court."   The petitioner presented this claim to the PCR court in allegation 11-B-1 (amend. app. 1547-48).  The

PCR court ruled on the merits of the claim, and the issue was presented to the Supreme

Court of South Carolina via the petitioner's certiorari petition in question IV.  Ruling on this

issue, the PCR court found as follows:

> The applicant argues that because the appellate court did not
> warn the Applicant of the dangers of proceeding *pro se* on
> appeal, his waiver of the right to appellate counsel is therefore
> ineffective and he is entitled to have his sentence vacated and
> therefore a new trial. In support of his argument, the Applicant
> relies on *Snook v. Wood*, 89 F.3d 605 (C.A.9 (Wash.) (1996).
> While ignoring the non controlling nature of a Ninth Circuit
> Habeas case, this Court fully acknowledges the conceptual
> reliance contained in *Snook*, in that a criminal defendant must
> be warned of the dangers of *pro se* representation in order to
> legitimize any waiver of the right to appellate counsel. In *Snook*,
> the Ninth Circuit Court of Appeals ultimately confirmed the
> lower court's findings that Snook was not properly warned of
> the dangers of self-representation:

>> With regard to the waiver of counsel on appeal issue,
>> the district court held an evidentiary hearing to
>> determine whether Snook knowingly, intelligently, and
>> voluntarily waived his right to counsel on direct appeal.
>> On October 6, 1995. the district court issued a written
>> order stating:

>> [U]nder the applicable law, there has been no showing
>> at all of a knowing, voluntary, and intelligent waiver of
>> Petitioner's right to the assistance of counsel on appeal
>> of his aggravated murder conviction. No one ever talked
>> to Snook, a 24 or 25 year-old man, with a limited
>> education, with psychological problems, and who had
>> been sentenced to death, about the dangers and
>> potential consequences of self representation. Snook
>> did not have the background and experience in legal
>> matters in 1977-80 to represent himself in a capital
>> appeal of all appealable issues in this case.

>> *Snook v. Wood*, 89 F.3d 605,609 (C.A.9 (Wash.)1996).

> Even applying the same analysis used in *Snook*, this Court
> finds the Applicant's claims to be without merit. The *Snook*
> court stated:

>> In *Balough* and *Hendricks*, we recognized "that a limited
>> exception may exist whereby a district court's failure to

discuss each of the elements in open court will not necessitate automatic reversal when the record as a whole reveals a knowing and intelligent waiver." *Balough*, 820 F.2d at 1488. In such cases, "we will look to the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused to determine whether the waiver was knowing and intelligent despite the absence of a specific inquiry on the record." *Id.* (quotations omitted). Nevertheless, before a defendant can make a knowing and intelligent waiver of counsel on appeal, the defendant must "be made aware of the dangers and disadvantages of self-representation," if not by the court, then by some other source. *Faretta*, 422 U.S. at 835,95 S.Ct. at 2541. *Snook v. Wood*, 89 F.3d 605,613 (C.A.9 (Wash.),1996).

Unlike *Snook*, the Applicant represented himself *pro se* at trial. It is clear from the record, and as stated above, the Applicant was warned on numerous occasions of the dangers of self-representation. Pretrial transcript p. 167 L. 24 - p. 168 L. 4, ROA p. 86 L. 24 p. 87 L.4. ROA p. 891-892, 893-894. ROA p. 899-908. Trial transcript p.20 L. 23 p. 23 L. 16. Additionally, this Court notes the additional factors used in finding that the Applicant was aware of the dangers of representing himself *pro se* per *Gardner v. State*, 351 S.C. 407, 570 S.E.2d 184, (2002). The Applicant has failed to demonstrate that a criminal defendant needs to be warned again by the appellate court of the dangers against self-representation in order to validate his waiver of the right to appellate counsel after proceeding *pro se* at trial.

This Court additionally looks to *State v. Roberts*, 364 S.C. 583, 614 S.E.2d 626 (2005) in finding that the Applicant's claim is without merit. While our State Supreme Court found that Roberts was not entitled to proceed *pro se* on direct appeal, their reasoning was based on the fact that "[Robert]'s request to proceed pro se was not made in a timely fashion." *State v. Roberts*, 364 S.C. 583, 589, 614 S.E.2d 626, 629 (S.C.,2005). In *Roberts*, the appellant requested to proceed *pro se* only after the Office of Appellate Defense served and filed the initial brief for Roberts.

After an exhaustive analysis the South Carolina State Supreme Court stated that:

> Appellant clearly does not have a federal constitutional right to proceed pro se in this appeal from his criminal

36

conviction. We also find there is no state constitutional provision which confers such a right. We agree with the Florida, New Hampshire and Alabama Supreme Courts that language such as that contained in Art. I, § 14 of the South Carolina Constitution does not apply to appeals. However, the Court may, in its discretion, allow an appellant to proceed pro se in an appeal from a criminal conviction. *State v. Roberts*, 364 S.C. 583, 588-589, 614 S.E.2d 626, 629 (S.C.,2005) emphasis added.

Accordingly, this Court acknowledges that the Applicant moved the appellate court to be allowed to proceed *pro se* on appeal. States exhibit #1 and #2.  The Applicant's "Motion to Proceed Pro Se on Appeal" was granted by the South Carolina Court of Appeals on September 15, 2000. See, Application for Post Conviction Relief p. 23. In the handwritten documents submitted to the appellate court(s), the Applicant insisted on representing himself *pro se* on appeal. The Applicant's motions/affidavits included the following (among others) assertions:

> "(1) I, Mr. E. S. Adams III, am the Appellant Pro. se. in the above Captioned matter."
> "(2) In Conformity with Rule 602 (e)(6) of The SCACR I have Forthwith A motion To This Court so I can obtain an order Saying that I am indigent and Competent To represent myself on my Appeal."
> "(5) I am very much Competent to represent myself on this Appeal."
> "(6) I represented myself at Trial and did A very Good Job."
> "(7) I am also Pro. se. in several actions."
> Edmond Stanley Adams, III. "Affidavit To Support Motion by Mr. Edmond Stanley Adams, III Esq." Dated January 4,2001.

> "(1) Hence That The Appellant hereto Captioned asserted and exercised his Constitutional Rights To represent himself pro. se. at his criminal Trial. See U.S. Const. Amend VI., S.C. Const. Art. I § 14, code of Laws of S.C. 17-23-60 and The precedent Faretta vs. California 422 U.S. 806, 834 N. 46 (1975)"
> "(2) Hence That The Appellant demonstrated That he can effectively Function in The Judicial are ana [sic]."
> "(4) Hence that The Appellant Appealled [sic] his Conviction Pro. se. and is The only Attorney of Record in this Appeal."

37

"(5) Hence That pursuant To Rule 235(a)&(b) and 236 (c) of The SCACR The Appellant is Still The Attorney For himself/Guardian at [sic] Litem."

"(7) Hence The Appellant wishes To proceed Pro. se. in his Appeal whetherby [sic] Submitting or sending Forth his own Brief pointing out reversible err."

"(8) Hence That pursuant To Rule 1.2 of The SCACR (Scope of Representation) I have The Ultimate Authority in my Case."

"(9) Hence That do [sic] to A Conflict of interest with The S.C. Appellate Court Commission I wish To proceed pro.se. in This Appeal at This Time."

"(10) Hence I do not want The S.C. Appellate Court Defense Commission involved in my case in part or in whole."

"(1) Hence That I am The "only" Attorney of Record in these hereto Captioned Captioned [sic] cases."

"(2) Hence That I have not Filed "any" motions in any Court to relinquish my Pro. se. Rights."

"(7) Hence That I have reviewed several Briefs From The S.C. Appellate Court Defense Commission because I am A Jail house Attorney."

"(8) Hence That I am not impressed with there [sic] work at all."

"(9) Hence To insure my lifes blood and my Brief is done in the correct Form For A reversal I want to Forthwith my own Brief and handle my own Appeal."

"(10) Hence at This Time I wish to proceed on Appeal Pro. se. to insure my Rights are protected. Furthermore I Sayeth Not."

Edmond Stanley Adams, III. "Notice of Motion and Motion To proceed pro. se. on appeal." Dated August 14, 2000 and received by the South Carolina Office of the Attorney General August 17, 2000.

This Court finds that the Applicant knowingly and intelligently waived his right to appellate counsel and was apprised of the dangers of proceeding *pro se.* The Applicant never objected to the introduction of the handwritten motions and affidavits submitted as State's exhibit #1 and which clearly demonstrate the Applicant's intent to proceed *pro se* on appeal. Additionally, as stated above, this Court finds that the Applicant was fully aware of the dangers of proceeding *pro se* and his waiver of the right to appellate counsel was not ineffective and any allegations to the contrary are wholly without merit.

(Amend. app. 1780-86).

38

The respondent argues that the state court was not unreasonable in denying the petitioner relief under § 2254(d)(1) since the PCR court correctly determined the petitioner was not entitled to a second set of *Faretta* warnings under federal law and further that the petitioner was apprised of the dangers of proceeding *pro se* prior to trial and knowingly and intelligently waived his right to appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 292 (2000) (Souter, D., dissenting) ("Although the Sixth Amendment guarantees trial counsel to a felony defendant, *Gideon v. Wainwright*, 372 U.S. 335 (1963), the Constitution contains no similarly freestanding, unconditional right to counsel on appeal, there being no obligation to provide appellate review at all . . . .") (citation omitted).  As argued by the respondent, *Faretta* and its Sixth Amendment analysis are irrelevant to the issue of the right to counsel on appeal. *See Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 161 (2000) (holding that representation on appeal is a due process issue not a Sixth Amendment one); *Hern v. Marshall*, No. 2:06-2790-JAM-JFM, 2009 WL 2971556, at *4 n.3 (E.D. Cal. Sept. 11, 2009) ("[T]he rationale of the Court's decision [in *Martinez*] precludes extension of the requirements of *Faretta* to a request to proceed *pro se* on direct appeal from a criminal conviction.  Accordingly, petitioner's claim that his constitutional rights were violated in connection with the granting of his request to discharge his attorney and proceed *pro se* on appeal should be denied."); *State v. Roberts*, 614 S.E.2d 626, 629 (S.C. 2005) (holding that defendant did not have a federal or state constitutional right to proceed *pro se* on appeal but that the court may, in its discretion, allow an appellant to proceed *pro se* in an appeal from a criminal conviction).

Even assuming *Faretta* did apply on appeal, because the state record establishes that the petitioner freely, knowingly, and voluntarily waived appellate counsel, the petitioner cannot show he is entitled to relief under § 2254(d).  As the petitioner received multiple *Farretta* warnings below, the petitioner was clearly aware that self-representation could be dangerous from a legal perspective.  The petitioner's numerous documents submitted to the Court of Appeals reveal that he voluntarily and knowingly waived his right to appellate counsel (*see, e.g.,* amend. app. 1987-88, m. to

proceed *pro se* on appeal).  As the state court's decision was not contrary to nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, this ground for relief should be denied.

### Ground Four

In Ground Four, the petitioner contends that the denial of his claim that he was denied counsel at critical stages of his trial "was objectively unreasonable to clearly established federal law as determined by the U.S. Supreme Court."   The petitioner presented this claim in PCR in allegations 11-K-1, 10-L-1, 10-M-1, 10-N-1, 10-O-1, and 10-P-1 (amend. app. 1542, 1553-54).  The PCR court ruled on the merits of the claim, and the petitioner presented it to the Supreme Court of South Carolina via his petition for writ of certiorari in question XIII. In denying this claim, the PCR court reasoned:

> The Applicant alleges that he is entitled to relief due to failure of the trial court to appoint counsel, or in the alternative, waive his right to counsel during the *Blair* hearing, Voir Dire, sentencing, the rehearing stage on appeal and on remand from appellate court to General Sessions. The Applicant has failed to demonstrate any prejudice whatsoever entitling him to relief even assuming his allegations were legitimate.

> This Court finds no merit whatsoever in the Applicant's claim that he was not represented by counsel during the *Blair* hearing. As Chief Administrative Judge, I signed an Order dated October 13, 1999, appointing Doug Truslow to represent the Applicant at the final competency evaluation hearing (ROA p. 896).

> During the Voir Dire, the Applicant had "Advisory Counsel." The role of "Advisory Counsel" during the trial was exactly what the Applicant requested. Pretrial transcript p. 167 L. 24 - p. 168 L. 4, ROA p. 86 L. 24 - p. 87 L.4. The trial court specifically asked the Applicant just prior to jury selection if the Order appointing "Advisory Counsel" reflected the full granting of the Applicant's request and the Applicant stated "[It] does, Sir." Trial transcript p. 20 L. 8-22. If that is not sufficient, immediately prior to jury selection the trial court also confirmed that the Applicant had waived his right to counsel and was proceeding *pro se.*

> THE COURT:  ON THIS ISSUE -- ALL RIGHT, SIR. NOW, LET, JUST LET THE RECORD REFLECT THAT

> MR. ADAMS HAS CHOSEN TO REPRESENT HIMSELF. THIS COURT HAS HAD A NUMBER OF CONVERSATIONS WITH MR. ADAMS AS WELL AS PRIOR COURTS DETERMINED THAT HE HAS FULLY, KNOWINGLY AND INTELLIGENTLY WAIVED HIS RIGHT TO AN ATTORNEY. Trial transcript p. 18 L. 17-22.

Accordingly, this Court finds no merit whatsoever that the Applicant's waiver of the right to counsel was ineffective at the jury selection phase.

During the sentencing stage there is no requirement for the trial judge to appoint counsel or obtain another waiver, for a *pro se* defendant during the sentencing phase of the criminal trial.

> In *United States v. Holmen*, 586 F.2d 322 (4th Cir.1978) the court found it was error not to allow appellant to withdraw his waiver of counsel and have counsel appointed at the sentencing stage. However, in *Holmen*, the sentencing stage was a separate proceeding unlike the continued proceeding in the instant case involving a sequestered jury. *State v. Reed*, 332 S.C. 35, 44, 503 S.E.2d 747,751 (1998).

The Applicant was sentenced immediately following the jury verdict, not as a separate proceeding as in *Reed*. Trial transcript, p. 1573. Accordingly, this Court finds that the Applicant has failed to demonstrate he is entitled to relief because the trial court should have conducted another waiver of the right to counsel (or simply appointed counsel) at the sentencing phase. Neither has the Applicant demonstrated to this Court that was in any way prejudiced during the sentencing phase even if he were not afforded a right to counsel (which he waived).

The Applicant's allegation that he is entitled to relief because he was not appointed counsel, or waived the right to appointed counsel on appeal as stated above, is completely without merit. The Applicant motioned the appellate court to appear *pro se* on appeal, simply because the Applicant elected to pursue a motion for rehearing with the appeal court while his direct appeal was pending did not vest the appellate court of jurisdiction and the Applicant has failed to demonstrate that he entitled to separate waivers of the right to counsel throughout the various stages of his appeal.

41

Finally, the Applicant alleges he is entitled to relief because "he was not advised that he could appeal his case to the U.S. Supreme Court upon his denial of appellate relief." This Court finds no merit whatsoever in the Applicant's above claim. The Applicant has failed to demonstrate any source or authority indicating a *pro se* criminal appellant is entitled to be advised that he can request review by the United States Supreme Court following a denial during direct appeal of a criminal conviction in a State's Supreme Court.

This Court finds Applicant's testimony is not credible, while also finding Applicant's advisory counsel's testimony is credible. Accordingly, this Court finds Applicant has failed to prove the first prong of the *Strickland* test - that counsel failed to render reasonably effective assistance under prevailing professional norms. This Court also finds Applicant has failed to prove the second prong of *Strickland* - that he was prejudiced by counsel's performance.

(Amend. app. 1790-92).[5]

The respondent argues that a review of the record shows the state court was not unreasonable in denying the petitioner relief under § 2254(d)(1) since the petitioner was represented by counsel at the *Blair* hearing[6] and, thereafter, as found by the PCR court, he freely, knowingly and intelligently waived his right to counsel, a factual finding that is

---

[5]This portion of the amended appendix contains several repeated page numbers and out of order page numbers.

[6]The petitioner notes that another *Blair* hearing was held on the day of trial at which time he was proceeding *pro se* (resp. m.s.j. pp. 32-35, doc. 57). The petitioner would not speak with the doctors, and, therefore, the State and the petitioner stipulated that the doctors would testify that the petitioner would not cooperate, and thus they could not provide any additional information to the testimony they had given in a prior court proceeding, at which time the petitioner had been found competent (amend. app. 20-21). The trial court found as follows:

I will note for the record that in my many conversations with Mr. Adams, I have had no reason to suspect his competency. I have expressed to him my reservations about his wisdom in choosing to represent himself.

But that is his right and I find that he has fully waived that right to have representation and . . . since there's no either in his mind nor in the court's mind concerning his competency, since he has been previously found competent by this court and since he did not cooperate with the doctors so they cannot add anything, then in effect, Mr. Adams, has stipulated to what their testimony would be. So the doctors will be excused.

(Amend. app. 23).

presumed to be correct under § 2254(e). Moreover, because the petitioner had the assistance of advisory counsel at trial and further acknowledged the order regarding advisory counsel's role in the trial was consistent with his desires, the petitioner is unable to claim the State denied him counsel at a critical stage of trial. With respect to any of the petitioner's claims related to the appellate process, those claims are without merit as set forth in Ground Three. As the state court's decision was not contrary to nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, this ground for relief should be denied.

### *Ground Five*

In Ground Five, the petitioner argues the state court's denial of relief on his claim that his waiver of the right to trial counsel claim was not knowingly and voluntarily made because no transcript exists showing he was warned of the dangers of self representation "was objectively unreasonable to clearly established federal law as determined by the U.S. Supreme Court." The petitioner presented this claim in his PCR application in allegation 11-A-2 (amend. app. 1545), and the PCR court ruled on the merits of this claim. The petitioner presented this claim to the Supreme Court of South Carolina via question II of his petition for writ of certiorari, which was denied. Ruling on this issue, the PCR court found as follows:

> In addition, the Applicant alleges that his waiver of the right to trial counsel was not knowing and voluntarily made because no record exists to demonstrate he was warned of the dangers of self representation. This Court finds the allegation that the Applicant was not warned of the dangers of self-representation to be completely without merit. At the PCR hearing, the Applicant at times testified, and at times argued his case. This Court notes that the Applicant was very careful to not testify under oath that he was never warned of the dangers of self representation, the Applicant only narrowly alleges that no transcript exists to demonstrate that he was properly warned. This Court acknowledges, based on the record and the representations made by the State at the PCR hearing, that a transcript of the pre-trial proceedings of the Applicant's waivers of the right to trial counsel and warnings of the dangers of self-representation are most probably unavailable.

43

Nevertheless, this Court does have an Order signed by the trial judge, at the request of the Applicant and his advisory counsel, which specifically outlines the role of the advisory counsel (ROA p. 899-908). The Order appointing advisory counsel also contains extensive findings of facts and conclusions of law that the Applicant knowingly and voluntarily waived his right to counsel on more than one occasion after being warned multiple times of the dangers of self-representation. Once again, this Court finds any allegations regarding any ineffectiveness of the Applicant's waiver of the right to trial counsel to be wholly without merit.

Even though no concise "Order Appointing Standby Counsel" is contained in the Record on Appeal which specifically finds that the Applicant knowingly and voluntarily waived his right to trial counsel with a full understanding of the dangers of self-representation, this Court points out the PCR testimony of Joseph McCulloch, "Advisory Counsel" to the Applicant during his trial, who opines that the Applicant did not indicate that his age, educational level, and physical and emotional health in anyway negatively impacted his ability to represent himself. Advisory counsel testified that the Applicant seemed experienced with the legal system and had been involved (successfully) in prior criminal charges. Advisory counsel also testified that the Applicant was clearly aware of the nature of the charges and had had numerous competent attorneys representing himself prior to electing to proceed *pro se.* Mr. McCulloch testified that the Applicant knew the Rules of procedure and that he (advisory counsel) was available to answer any questions of Applicant, and that the decision to proceed *pro se* did not appear to be intended to delay or manipulate the proceedings. Advisory counsel further testified that the Applicant was aware of the issues needed to be raised so as to defend himself against the charges. Advisory counsel further testified, and the record reflects, that the exchanges between the trial court and the Applicant went beyond pro forma replies. Advisory counsel testified that the Applicant's waiver of the right to counsel was not made due to coercion or mistreatment. Regarding these other factors, as well as a full review of the entire record of both the trial and subsequent appeal, this Court finds that the Applicant was sufficiently apprised of the dangers of self-representation. *Gardner v. State*, 351 S.C. 407, 570 S.E.2d 184 (2002).

(Amend. app. 1773-75).

The respondent argues that a review of the record shows the state court was not unreasonable in denying the petitioner relief under § 2254(d)(1) since the PCR court found, as a factual matter, that the petitioner was fully apprised of the dangers of self-representation, citing to both the pre-trial orders and the testimony of advisory counsel Mr. McCulloch, who unlike the petitioner, was found to be a credible witness.  This court agrees.

Furthermore, despite the petitioner's assertion that a transcript of the waiver is somehow required, this is not clearly established federal law.  Indeed, "[o]ur precedents also place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citing *Patterson v. Illinois*, 487 U.S. 285, 292 n.4 (1988)).  Where a defendant chooses to waive his right to counsel and represent himself, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (internal quotations omitted). However, a trial court's failure to advise a defendant of the dangers and disadvantages of self-representation does not automatically render the proceedings unconstitutional. *United States v. Gallop*, 838 F.2d 105, 110 (4th Cir. 1988).  Instead, in the absence of a specific inquiry regarding the dangers of self-representation, courts will look to whether the accused had sufficient background to intelligently waive his right or was apprised of the dangers of self-representation from some other source. *See id.* (holding that in the absence of *Faretta* warnings, the court should review the record as a whole to determine the sufficiency of a defendant's waiver of counsel).  In reviewing the record to determine whether a defendant has a background to intelligently waive his right or knew of the dangers of self-representation from some other source, the Fourth Circuit has looked to "the educational background, age and general capabilities of an accused[.]" *Id*.

Here, because the court order appointing standby counsel that is referenced by the PCR court actually stated the petitioner had received multiple *Farretta* warnings, this

45

would be enough to prove a valid waiver alone (*see* amend. app. 2175-84 ("On more than one occasion, the Defendant has been fully advised of the dangers of self-representation and has knowingly, intelligently, and voluntarily waived his right to be represented by counsel pursuant to the 6th Amendment of the U.S. Constitution.")).  Moreover, the record shows that at the beginning of the petitioner's trial, the trial judge stated:

> "[J]ust let the record reflect that Mr. Adams has chosen to represent himself.  This court has had a number of conversations with Mr. Adams as well as prior courts determined that he has fully, knowingly and intelligently waived his right to an attorney.
>
> However, at his request, I have appointed an advisory counselor, Mr. Joseph McCulloch, who is also in the courtroom.  Mr. McCulloch has been assisting Mr. Adams to, in some regard for several weeks, but in response to Mr. McCulloch's request, the court issued an order . . . clarifying Mr. McCulloch's duties and responsibilities in this case.

(*Id.* 18-19).  The trial court further stated:  "I will note for the record that in my many conversations with Mr. Adams, I have had no reason to suspect his competency.  I have expressed to him my reservations about his wisdom in choosing to represent himself.  But that is his right and I find that he has fully waived that right to have representation . . . ."(*id.* 23).  Thus, when taken in conjunction with McCulloch's testimony regarding the relevant factors to show a waiver without *Farretta* warnings, it is obvious the petitioner's waiver of counsel was voluntary, knowing, and intelligent, and thus the state court did not unreasonably apply clearly established federal law for purpose of § 2254(d) when it denied relief on this claim.  Accordingly, this ground for relief should be denied.

### Ground Seven

In Ground Seven, the petitioner contends the state court's decision to deny relief on his claim that his waiver of appellate counsel was involuntary because of his disdain for the South Carolina Office of Appellate Defense "was objectively unreasonable to clearly established federal law as determined by the U.S. Supreme Court."The petitioner presented this claim to the PCR court via allegation 11-B-2 (amend. app. 1548), and the

PCR court addressed the merits of the claim. The petitioner subsequently presented the claim to the Supreme Court of South Carolina via question five of his petition for writ of certiorari. In denying relief on the petitioner's claim, the PCR court noted that the petitioner voluntarily waived his right to appellate counsel, citing to a variety of documents filed with South Carolina Court of Appeals, and further ruled:

> One of the Applicant's claims for PCR relief is that his waiver of counsel on appeal was unconstitutional because he waived his right to appointed appellate counsel to keep the S.C. Appellate Commission from interfering with his case when he attempted to obtain private appellate counsel and that he was never found, by the Appellate Court, to be indigent. Present in the court room during the PCR hearing, the Applicant's mother verified the Applicant's assertion that a $500 retainer was accepted by private counsel for the purposes of appeal but that said private counsel rendered no aid (PCR allegation 11-Q-1). See also, Application for Post- Conviction Relief, p. 24. This Court finds that the Applicant has repeatedly requested to take advantage of his indigent status throughout his trial (several appointed attorneys, court appointed investigators, free service of process, etc.), his appeal (Office of Appellate Defense paid the court reporter, Tara D. Shurling was appointed by the appellate court to perfect the Record on Appeal), and the Applicant requested to proceed without paying the filing fees for the PCR. This Court finds no merit whatsoever in the Applicant's convoluted argument that he is entitled to PCR relief because did not properly Waive the right to appellate counsel because (either by request or not) appellate counsel assisted in his appeal.

(Amend. app. 1785-86).

The respondent argues that a review of the record shows the state court was not unreasonable in denying the petitioner relief under § 2254(d)(1) since the PCR court found, as a factual matter, that the petitioner's pleadings in the South Carolina Court of Appeals established the petitioner clearly elected to proceed *pro se* on appeal. This court agrees. Because the petitioner received multiple *Faretta* warnings prior to trial, it follows that the petitioner was sufficiently apprised of the potential pitfalls of self-representation on appeal. Accordingly, even if the petitioner elected to proceed *pro se* on appeal because he in fact believed he could do a better job on his appeal than the South Carolina Office of

47

Appellate Defense, this does not render his waiver of appellate counsel involuntary. Rather, it establishes that the petitioner elected to utilize his right to self-representation because of his belief that he could do a better job than an attorney, as demonstrated in his pleadings before the South Carolina Court of Appeals.  Based upon the foregoing, this ground for relief should be denied.

### Ground Nine

In Ground Nine, the petitioner argues that the state court's denial of relief on his claim that his appeal took an inordinate amount of time "was objectively unreasonable to clearly established federal law as determined by the U.S. Supreme Court."  The petitioner presented this claim to the PCR court via allegation 11-F-1 (amend. app. 1550). The PCR court ruled on the merits of the claim, and the petitioner presented the claim to the Supreme Court of South Carolina via question VIII.  In denying relief on this claim, the PCR court found:

> The Applicant alleges that because his direct appeal was not finally adjudicated until December 22, 2005 his right to a "speedy remedy on appeal" was denied. This Court finds that any "delay" in adjudicating the Applicant's appeal was necessary, due to the number of motions filed by the Applicant and the requisite time to address those issues. This Court understands that the Applicant has every "right" to have the appeals court address his issue(s). However the records before this Court indicate the final filing was on or about April 29, 2005 and the appeals court made their ruling on September 15, 2005. The Applicant has not demonstrated any aspect of the direct appeal that indicates an extraordinary unnecessary delay by the State. Accordingly, this Court finds the Applicant's claims to be without merit. *Maner v. Maner*, 278 S.C. 377, 296 S.E.2d 533, 537 (S.C. 1982).

(App. 1786-87).

The Fourth Circuit has recognized that "undue delay in processing an appeal may rise to the level of a due process violation." *United States v. Johnson*, 732 F.2d 379, 381 (4th Cir.1984).  In determining whether a due process violation has occurred, the court analyzes the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972):  1)  the length

of delay, 2)  the reason for the delay, 3)  the defendant's assertion of his right, and 4) prejudice to the defendant. *Id*. at 381-82.

The respondent argues that a review of the record shows the state court was not unreasonable in denying the petitioner relief since the record supports the PCR court's conclusion that the petitioner, as demonstrated in his pleadings in the South Carolina Court of Appeals, was the major source of the delay.  The respondent agrees that the petitioner has the right to file non-frivolous motions that are supported by the facts and law, but argues that, as a matter of equity, the petitioner cannot then come to the federal court in his habeas corpus action and complain the state courts took too long in actually addressing each of his pleadings in addition to his appeal.  The respondent cites numerous motions filed by the petitioner in the Court of Appeals, including four motions to stay his appeal, three of which were granted (*see* m.s.j. 5-6 n.3-5, doc. 30).

The petitioner notes that his direct appeal was filed in April 2000 and was final in September 2005 (resp. m.s.j. 66, doc. 57).  The numerous filings by the petitioner, and, most importantly, the petitioner's three motions to stay that were granted by the state court, certainly appear to be the biggest reason for the delay.  With regard to the third factor, the court finds that the petitioner has adequately asserted his right to a speedy appeal.  Finally, with regard to the fourth factor, the court finds that the petitioner has not been prejudiced by any delay because the limitations period for filing a habeas corpus action does not begin until the "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Accordingly, this court concludes that the delay in the petitioner's direct appeal has not resulted in a denial of due process.  Accordingly, the state court's decision was not contrary to nor did it involve an unreasonable application of clearly established federal law.  Based upon the foregoing, this ground for relief should be denied.

### Ground Ten

In Ground Ten, the petitioner argues that the state court decision denying his claim that his right to free access to the courts was violated by having to pay for postage

49

"was objectively unreasonable to clearly established federal law as determined by the U.S. Supreme Court."  The petitioner presented this claim to the PCR court via allegation 11-E-1 (amend. app. 1549), and the PCR court ruled upon the merits of the claim.  The petitioner then presented the claim to the Supreme Court of South Carolina via question VII of his petition for writ of certiorari.  Ruling on the claim, the PCR court found:

> The Applicant alleges that by charging the Applicant for copies as well as postage he was denied free access to the courts. As explained above, the Applicant knowingly and voluntarily waived his right to counsel, the Office of Appellate Defense paid for the Applicant's transcript and the appellate court appointed Tara D. Shurling, Esquire to help the Applicant perfect the Record on Appeal. The Applicant has demonstrated no prejudice whatsoever from the policies of the Applicant's penal institutions and the fact that copying and postage may have required funds. This Court finds the Applicant's claims to be without merit.

(Amend. app. 1786).

It is well settled that "[p]risoners do not have an unlimited right to free postage in connection with the right of access to the courts.  Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations." *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir.1978) (citation omitted).  Furthermore, prisoners do not have a constitutional right to free, unlimited copying services. *See Dugar v. Coughlin*, 613 F. Supp. 849, 854 (D.C. N.Y. 1985).  While prisoners have a fundamental right to "adequate, effective, and meaningful" access to the courts, *Bounds v. Smith*, 430 U.S. 817, 822 (1977), to state a cognizable claim for denial of meaningful access to the courts, a prisoner must allege a specific, actual injury resulting from the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 351–52 (1996). *See also Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir.1996).

The petitioner has not alleged nor shown that he missed any court deadlines or that he has actually been impeded in any way pertaining to access to the courts by being charged for legal copies and postage.  As stated by the PCR court, "The Applicant has demonstrated no prejudice whatsoever from the policies of the Applicant's penal institutions and the fact that copying and postage may have required funds."  As the state court's

decision was not contrary to nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, this ground for relief should be denied.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 29) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

February 3, 2014
Greenville, South Carolina

51

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).